[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14684
Non-Argument Calendar

_____

D. C. Docket No. 05-00017-CR-HL-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARTIN L. HARRELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(June 6, 2007)

Before BIRCH,  BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Martin Ladon Harrell appeals his sentence of restitution in the amount of $319,145.10, imposed following convictions for conspiracy to interfere with interstate commerce by threats, intimidation, and extortion, conspiracy to commit arson and mail fraud, arson, witness tampering, and misleading statements under 18 U.S.C. §§ 371, 844(i), 1341, 1512(b)(1), 1512(b)(3), and 1951(a)(1). Because it is not clear from the record that Harrell understood the full significance of the appeal waiver in his plea agreement, we will not enforce the waiver against him. Nevertheless, because the Mandatory Victim and Restitution Act of 1996, 18 U.S.C. § 3663A ("MVRA"), required the district court to order restitution in this case, it did not commit plain error by doing so. Accordingly, we AFFIRM the district court's order of restitution in this case.

## I. BACKGROUND

In 2005, Harrell, with Dexter Harrison and Charles L. Harrell ("Charles"), was indicted in a 13-count superceding indictment. In the indictment, Harrell and Charles were jointly charged with conspiring to interfere with interstate commerce by threats, intimidation, and extortion, in violation of 18 U.S.C. § 1951(a)(1) (Count 1), and interfering with interstate commerce by threats, intimidation, and extortion, in violation of 18 U.S.C. § 1951(a)(1) (Count 2). Harrell was separately charged with interstate travel in aid of racketeering, in violation of 18 U.S.C.

2

§ 1952(a) (Count 3).  Harrell and Harrison were jointly charged with:

(1) conspiring to commit arson and mail fraud, in violation of 18 U.S.C. §§ 371,

844(I), and 1341 (Count 5); (2) mail fraud, in violation of 18 U.S.C. § 1341 (Count

6); and (3) arson, in violation of 18 U.S.C. § 844(i), and 2 (Count 7).  Harrell was

also separately charged in the indictment with: (1) three counts of witness

tampering, in violation of 18 U.S.C. § 1512(b)(1) (Counts 8, 9, and 10); (2) an

additional count of interference with interstate commerce by threats, intimidation,

and extortion, in violation of 18 U.S.C. § 1951(a) (Count 11); and (3) making

misleading statements, in violation of 18 U.S.C. § 1512(b)(3) (Count 12).

Finally, the indictment also separately charged Charles with witness tampering, in

violation of 18 U.S.C. § 1512(b)(3) (Count 4), and charged Harrison with making

misleading statements, in violation of 18 U.S.C. § 1512(b)(3) (Count 13).

Thereafter, the court severed the counts in the indictment into three separate

trials according to their relevance to each other.  Specifically, the court ordered that

Counts 4-10 and 12-13 would be tried first, and that later, separate trials would be

held on Counts 1-3, and on Count 11.

At the first trial, Harrell was convicted under Counts 5, 7, 10, and 12, but

was acquitted of Counts 6, 8, and 9.  Subsequently, before any additional trial was

held, Harrell pled guilty to Count 1 in exchange for the dismissal of Counts 2, 3,

3

and 11. In his plea agreement, Harrell "knowingly and voluntarily" agreed to waive his right to appeal his convictions or sentences on any of the counts of conviction from the trial or following his guilty plea, unless his sentence exceeded the guideline range. R3-318 at 4. The district court entered written findings following a change of plea hearing, finding, among other things, that Harrell had knowingly and willingly waived "the right to appeal any verdict of guilty and to be represented on appeal by counsel." R3-320 at unnumbered 2. A transcript from the change of plea hearing is not included in the record.

According to the Presentence Investigation Report ("PSI"), in 2000, Harrell entered into a contract with Bill Chandler to raise cattle. At the conclusion of the contract, Harrell believed Chandler was not paying him what he was due and threatened him with bodily injury. Thereafter, Harrell and his father, Charles, conspired with two other men who lured Chandler from his home and then assaulted him. Chandler fought the men off, and one of the men was eventually apprehended.

In 2001, Harrell entered into a conspiracy with Harrison to burn down a motel owned by Harrison. On 7 January 2002, Harrell sprayed a mixture of diesel fuel and gasolene in five interior areas of the motel, including near a natural gas line, and left containers of fuel throughout these areas. At that time there were 16

4

guests in the motel and 1 employee.  Although all of the guests exited the motel, one of them suffered smoke inhalation that required treatment.  The PSI also noted misrepresentations made by Harrell during the investigation of the arson, as well as Harrell's attempt to get his wife to stop assisting the authorities.  Following the arson, Harrison's insurer paid him $319,145 for the damage to the motel.

To calculate Harrell's offense level, the PSI divided the counts of conviction into three groups.  In its calculation, the PSI added enhancements for: (1) Harrell's role as a leader under Count 1; and (2) obstruction of justice under all three groups.  After applying the multiple count adjustment, the PSI assigned Harrell a total offense level of 34.  Although the PSI listed some criminal conduct and arrests, it listed no criminal convictions and assigned Harrell zero criminal history points and a criminal history category of I.  With a total offense level of 34 and a criminal history category of I, the PSI calculated a guideline sentencing range of 151 to 188 months.

The PSI advised that the Court was required to order restitution pursuant to 18 U.S.C. § 3663(a).  In this regard, the PSI noted that the injured motel guest had not submitted any statement of financial loss and reiterated that the insurer's total loss was $319,145.10.  The PSI also noted that the advisory guidelines required that restitution be paid, under U.S.S.G. § 5E1.1.

The government filed numerous objections to the PSI, including objecting to the restitution amount. Specifically, the government argued that Harrell should also have to pay the attorney's fees stemming from a civil suit filed by Harrison against the insurer following the fire. The probation officer responded, arguing that there was no evidence that Harrell had participated in Harrison's attempt to get more money from the insurer for the repairs to the motel, and that Harrison's actions in this regard were unrelated to Harrell's actions.

Harrell objected to statements made in the PSI regarding conduct not included in the offense's relevant conduct, and argued that he should have received an adjustment for acceptance of responsibility. In response, the probation officer argued that the adjustment was not appropriate because Harrell had been convicted on several counts and had been given an adjustment for obstruction of justice.

At the sentencing hearing, the court heard from witnesses called by both the government and the defense. Thereafter, the government argued its objections to the PSI, concluding by noting that the question of the amount of restitution was still open. In response, Harrell's counsel noted that Harrell had been acquitted of mail fraud and argued that the civil suit against the insurer had been initiated solely by Harrison and Harrell did not benefit from it. In conclusion, Harrell's counsel asked the court to adopt the recommendations in the PSI, particularly regarding the

issue of restitution and upward departure. The government then argued that Harrell should be held responsible for some of the attorney's fees because he was deposed in the civil suit and could have told the insurer that the suit was a sham.

After Harrell addressed it in allocution, the court overruled the government's objections and found that the guideline range was 151-188 months of imprisonment. However, the court then sentenced Harrell to a total sentence of 240 months of imprisonment. The court stated, among other things, that it had determined that a 240-month sentence was appropriate and complied with the 18 U.S.C. § 3553(a) sentencing factors, specifically listing several of those factors. The court also ordered Harrell to pay $319,145.10 in restitution. The court also noted that Harrell had "knowingly and voluntarily waived [his] statutory right to appeal with certain exceptions specified in [his] plea agreement, even as to the counts for which [he was] sentenced at the jury trial," but still cautioned him that if he did mean to file an appeal he had to do so within 10 days. R6-56. Finally, after consulting with the probation officer, the court, among other things, expressly overruled Harrell's request for an acceptance of responsibility adjustment, and clarified that it had imposed a variance in his sentence, not a departure.

Thereafter, the court entered a written judgment in accordance with its oral sentence, and dismissing Counts 2, 3, 6, 8, 9, and 11. Harrell timely appealed.

## II. DISCUSSION

### A. Whether Harrell waived his right to appeal his sentence

Although Harrell does not address this issue, the government briefly argues that because Harrell executed a plea agreement containing an appeal waiver as to all of the counts of conviction, and because the waiver "was explained to him on the record by the district court during his plea colloquy," he has waived his right to appeal. Appellee's Br. at 8.

We review the waiver of the right to appeal de novo. United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997) (citation omitted). Appeal waivers are valid if they are made knowingly and voluntarily. United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). For an appeal waiver to be enforced, the government must show that either: (1) the district court specifically questioned the defendant concerning the appeal waiver during the plea hearing, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver. Id. at 1351.

Here, the government has failed to satisfy the first prong of the test in Bushert because there is no transcript of the change of plea hearing in the record. The government does not address the second prong in its brief, and the record shows only that: (1) the plea agreement contains a waiver and states that Harrell

8

understands that waiver; (2) the probation officer believed it had been entered knowingly and voluntarily; and (3) the court also believed the waiver was knowing and voluntary. Outside the plea agreement, the record does not include any statement by the defendant that clarifies whether he understood the waiver's full significance. We have held that the text of the plea agreement itself is not sufficient to show that the waiver was knowing and voluntary. Id. at 1352. Accordingly, because "a thorough review of the record [does not] yield any indication that [Harrell] otherwise understood the full significance of his sentence appeal waiver," we will not enforce the waiver. See id. at 1353.

B.  **Whether the district court plainly erred in sentencing Harrell to pay restitution**

On appeal, Harrell argues that the district court erred in holding him liable for the "restitution regarding the insurance proceeds" the insurer paid to Harrison, as he was acquitted of the mail fraud charge and did not receive any of the proceeds of the fraud.[1] Appellant's Br. at 14. He argues that this conclusion is supported by the fact that only Harrison was sentenced to repay the attorney's fees that resulted from the civil litigation regarding the repairs.

---

[1] He also argues that the government has conceded this error. As the government argues in its brief in response, however, this appears to be based on a misinterpretation of the government's arguments at sentencing.

Because Harrell did not object to the restitution sentence in any way before the district court, we will only review this issue for plain error. See United States v. Hasson, 333 F.3d 1264, 1276 (11th Cir. 2003) (citations omitted). Accordingly, Harrell must establish that: (1) an error occurred; (2) it is plain; (3) it affects his substantial rights; and (4) it seriously affected the fairness and integrity of the proceedings. See id. (citation omitted).

Under the MVRA, where a defendant is convicted of, among other things, a felony offense against property, the district court is required to "order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). The MVRA specifies that, in the case of an offense against property where no part of the property can be returned, the order of restitution must require the defendant to pay an amount equal to "the value of the property on the date of the damage, loss, or destruction." 18 U.S.C. § 3663A(b)(1)(B)(i)(II).

In this case, Harrell was convicted of conspiring to commit arson and of committing arson. The hotel that burned was not considered the victim in the PSI because the arson was committed with the intent of defrauding the building's insurer. Thus, the restitution amount identified in the PSI was the amount paid out by the insurer. This was in compliance with the MVRA and was not error, let

10

alone plain error.  See Hasson, 333 F.3d at 1276 (citation omitted) (stating that "a sentencing court does not commit plain error by relying on factual findings contained in the [PSI] regarding a defendant's ability to pay restitution").  The attorney's fees figure that was ordered paid by Harrison is irrelevant to Harrell as he was not implicated in the suit against the insurer.  Thus, the district court did not err in ordering restitution.

### III.  CONCLUSION

The government's insistence that Harrell's appeal be dismissed because of a valid appeal waiver is not adequately supported by the record.  On consideration of the merits of Harrell's appeal wherein he challenges the sentencing court's order of restitution, we find no reversible error.  Accordingly, the sentence is **AFFIRMED.**