[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-14443

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RACQUEL LAVETTE BIJOU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20535-AHS-2

_____

Before JORDAN, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

Racquel Lavette Bijou appeals her 168-month sentence for sex trafficking of a minor.  On appeal, Bijou argues that: (1) the district court erred in applying a two-level increase to her offense level under the Guidelines for unduly influencing a minor to engage in prohibited sexual conduct; (2) the district court erred in applying a two-level increase to the offense level based on its finding that Bijou knew or should have known that the victim was a vulnerable victim; and (3) her sentence was substantively unreasonable.  In response, the government argues that the appeal should be dismissed pursuant to the valid and enforceable appeal waiver in Bijou's plea agreement.  After careful review, we dismiss the appeal.

We review the validity of a sentence appeal waiver *de novo*. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008).  We also review *de novo* whether a defendant knowingly and voluntarily waived her right to appeal her sentence.  *United States v. Benitez-Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997).

Plea agreements "are like contracts and should be interpreted in accord with what the parties intended." *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005).  A sentence appeal waiver will be enforced if it was made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993).  To establish that a sentence appeal waiver was made knowingly and

voluntarily, the government must show either that: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver. *Id.*; *see also* Fed. R. Crim. P. 11(b)(1)(N) (requiring that the district court inform the defendant of the terms of an appeal waiver). The touchstone for assessing this question is whether it was clearly conveyed to the defendant that she was giving up her right to appeal under most circumstances. *United States v. Boyd*, 975 F.3d 1185, 1192 (11th Cir. 2020). We've concluded that an appeal waiver was enforceable when the waiver was referenced during the plea colloquy and the defendant confirmed that she understood the provision and had entered into it freely and voluntarily. *United States v. Weaver*, 275 F.3d 1320, 1323–24, 1333 (11th Cir. 2001). "There is a strong presumption that the statements made during [a plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

We've never adopted a general "miscarriage of justice" exception to the rule that valid appeal waivers must be enforced according to their terms. *United States v. King*, 41 F.4th 1363, 1368 n.3 (11th Cir. 2022). Moreover, we've said that appeal waivers apply "not only to frivolous claims, but also to difficult and debatable legal issues." *United States v. DiFalco*, 837 F.3d 1207, 1215 (11th Cir. 2016). However, a defendant who has agreed to a sentence appeal waiver does not subject herself to being sentenced entirely at the whim of the district court. *See Bushert*, 997 F.2d at 1350.

Some sentences, including those imposed above the statutory maximum or based on a constitutionally impermissible factor like race, may never be waived. *Id.* at 1350 n.18; *see also Johnson*, 541 F.3d at 1068 (observing that a sentence that implicated serious due process concerns, "for instance . . . a public flogging," may trigger review notwithstanding a valid waiver (quotations omitted)). But, notably, the recognized exceptions to the enforceability of appeal waivers are "few and sharply defined." *King*, 41 F.4th at 1367.

Here, Bijou's substantive arguments challenging the enhancements and reasonableness of her sentence are barred by the appeal waiver in her plea agreement. Because Bijou's appeal waiver broadly waived her right to appeal her sentence or the manner in which it was imposed, her challenges on appeal to the "undue influence" and "vulnerable victim" enhancements to her guideline calculations and to the substantive reasonableness of her 168-month sentence all fall within the scope of the waiver.

As the record reflects, Bijou's plea agreement allowed only three narrow exceptions to the waiver, where: (1) her sentence exceeded the maximum permitted by statute; (2) the sentence was the result of an upward departure or an upward variance from the advisory guideline range established at sentencing; or (3) the government appealed the sentence. However, her sentence was at the low end of the guideline range of 168 to 210 months' imprisonment and below the statutory maximum sentence of life imprisonment, and the government did not appeal her sentence. As a result, none of the exceptions to the waiver apply.

Because the appeal waiver bars Bijou's arguments, she can prevail only if it is unenforceable. On appeal, Bijou says that the waiver was unenforceable because she did not "fully understand" its significance. But the record shows that the district court fully complied with the requirements of Rule 11(b)(1)(N) when it engaged in a thorough discussion of the appeal waiver contained in Bijou's plea agreement. At the plea colloquy, Bijou affirmed that she read the entirety of the plea agreement and understood "every word." In addition, the court engaged in an extensive discussion about the appeal waiver "to make sure" that Bijou understood the rights she was surrendering. And when Bijou said at one point that she did not understand the exceptions to the appeal waiver, the court provided a further explanation and Bijou ultimately confirmed her understanding. She also indicated that she "fully discussed the waiver" with her counsel and that her counsel answered all of her questions. We presume that Bijou's statements under oath at the plea colloquy were true. *Medlock*, 12 F.3d at 187. Thus, on this record, we conclude that Bijou entered her plea knowingly and voluntarily. *See Boyd*, 975 F.3d at 1192; *Weaver*, 275 F.3d at 1323–24, 1333.

As for Bijou's argument that she did not receive the benefit of the bargain by pleading guilty because she only received a sentence that was one year below the mandatory minimum for the charge she pled down from, we are unpersuaded. The plea agreement, which she said she understood, provided that the district court was not bound by any recommendations or the guideline

range and could sentence her up to the statutory maximum of life imprisonment. Moreover, the agreement indicated that any estimation or recommendation was merely a prediction, not a promise, and Bijou would not be allowed to withdraw her plea if she received a higher sentence than what she expected. The fact that Bijou did not receive the sentence that she had hoped for does not affect the validity of her appeal waiver or her guilty plea.

Bijou adds that we should not enforce the appeal waiver to avoid a "miscarriage of justice." However, we've recognized only a "few and sharply defined" exceptions to the enforcement of an appeal waiver, none of which apply here, and we've never recognized a "miscarriage of justice" exception. *See King*, 41 F.4th at 1367–68 n.3. In any event, it is unlikely that any "miscarriage of justice" exception would apply here. Bijou received a sentence at the low end of the guideline range and well below the statutory maximum of life imprisonment. As for her discussion of her difficult life circumstances, this argument goes to the reasonableness of her sentence, and our case law directs us to apply appeal waivers even "to difficult and debatable issues." *DiFalco*, 837 F.3d at 1215. Accordingly, Bijou's appeal is barred by the appeal waiver in her plea agreement, and we dismiss the appeal.

DISMISSED.